UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KENNY GORIS,

                Plaintiff,                              Dkt. No.: 25-CV-1532

    -against-                                      **COMPLAINT**

DELOITTE,

                Defendant.
------------------------------------------------------------------------X

    Plaintiff, KENNY GORIS, by and through his attorneys, RICOTTA & MARKS, P.C., complaining of Defendant herein, alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This action brought pursuant to the Americans with Disabilities Act, the Uniformed Services Employment and Reemployment Rights Act, the New York State Executive Law, the Human Rights Law, §290, *et seq.*, and the New York City Administrative Code Title 8, as a result of unlawful discrimination due to disability and/or his military service to which Plaintiff was subjected during the course of his employment with Defendant, as well as any other cause of action which can be inferred from the facts set forth herein, and any other cause of action which can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant jurisdiction and the aforementioned statutory and constitutional provisions.

1

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC"). A right to sue letter was issued on November 26, 2024. This action was properly instituted within ninety (90) days of the issuance of said letter.

## PARTIES

5. At all relevant times mentioned, Plaintiff Kenny Goris ("Ken") was a resident of the County of Queens, State of New York during the applicable time period referenced below.

6. Defendant, Deloitte, ("Deloitte"), was and still is a private company located at 30 Rockefeller Plaza, 41st Floor, New York, NY 10112.

## FACTS

7. Ken suffers from disabilities including PTSD, back injuries (degenerative disc disease, lumbosacral strain, acervical strain with degenerative disc disease and degenerative arthritis, crushed vertebrae), knee injuries (left knee strain with osteoarthrosis, torn right patella), shoulder injuries (radiculopathy to his right upper extremity and left upper extremity, right shoulder acromioclavicular joint strain with recurrent dislocation, left shoulder partial supraspinatus tear, SLAP, and AC joint arthritis) and hip injuries (right hip osteoarthritis limitation of flexion, right hip osteoarthritis limitation of extension,  He also suffers from tinnitus, vertigo,

tinnitus and migraines). These disabilities impact Ken's major life activities, including his ability to walk, stand, and think.

8. More specifically, as a result of the above-mentioned disabilities, Ken is in near constant pain and suffers from numbness as well. Ken is also not able to stand for prolonged periods of time due to the above-mentioned injuries. Additionally, Ken also experiences migraines and vertigo, which affect his major lift activities. To deal with these injuries, Ken seeks regular medical assistance with pain management, including shots for his knees and neck. Moreover, Ken participates in mental health counseling, including group therapy for PTSD, and is proscribed medication for PTSD as well.

9. Ken suffered these injuries during his service as a member of the United States Armed Forces.

10. On or about November 11, 2016, Ken began his employment with Deloitte as an Advisory Manager in Transactions and Business Analysis.

11. Throughout the course of his employment with Deloitte, Ken performed his job duties in a satisfactory manner, and was qualified to perform his job.

12. When Ken began working for Defendant, he informed the company, through Janice Durisin ("Durisin"), Managing Director, of his disabilities including his chronic pain resulting from his injuries to his back, left and right knee injuries, as well as his need to attend medical appointments at the Veterans Administration Hospital to tend to these disabilities. Ken also informed Durisin about his military service, told her that he was deployed multiple times, and explained that he had monthly

medical appointments to attend at the Veterans Administration Hospital. Ken also informed Durisin in advance, of upcoming medical appointments. As such, Defendant was aware of Ken's disabilities and military service.

13. Ken is a Senior Officer of the United States Army Reserve. Ken was deployed by the Army in 2017, 2020, and 2022 to locations including Africa, Guantanamo Bay, and Fort Cavazos in Texas (To properly train service members going to Poland due to Russia's invasion of Ukraine).

14. On or about February 24, 2017, Ken deployed to Africa, and he returned on February 16, 2018. When Ken returned to Deloitte, he informed Defendant that he suffered injuries to his left and right shoulders. Additionally, Ken reiterated the above-mentioned injuries to his left knee, cervical strain, and back pain. As such, Defendant was aware of Ken's disabilities.

15. Most recently, after being deployed to Fort Cavazos, in or around December 2022, Ken returned from deployment. When he returned from deployment, Ken informed Defendant of his above-mentioned hip issues. Ken also had regularly scheduled upcoming appointments for medical treatment at the Veteran's Administration Hospital.

16. In or around January 2023, Ken returned to work at Deloitte. However, once he returned to work from his most recent military deployment, there was a marked shift in Defendant's treatment of Ken. Before Ken's deployment in 2022, his position was that of Manager, leading a team of twelve (12) anti-money laundering and financial crime specialists union employees. Ken oversaw their daily tasks

and provided them guidance. Before he was deployed, Ken and his team worked on an Anti-Money Laundering regulatory project, wherein Ken was entrusted with managerial responsibilities.

17. However, upon Ken's return to work in January 2023, Deloitte subjected him to discrimination based on his disabilities as well as his military service. After Ken returned from his deployment, Deloitte failed to reinstate Ken to a position comparable to the one he had prior to his most recent deployment, as required by law. Instead, Defendant required Ken to independently search for work assignments, by emailing Managers and Senior Managers and Partners he worked with, contacting the Human Resources Associate for Financial Crimes for opportunities, and searching Deloitte's portal for active projects, in violation of the Uniformed Services Employment and Reemployment Right Act.

18. In or around January 2023, Ken complained via phone call to Deloitte's Human Resources Senior Manager responsible for AML, Financial Crimes, and Regulatory Compliance projects (name unknown) about not being assigned to a similar position, and explained that he just returned from a prolonged military deployment, that he felt that Defendant did not provide him support, and that finding a project was challenging. Defendant ignored his complaints, and no corrective measures were taken.

19. Despite Ken repeatedly requesting assignments and/or projects for months, Defendant did not assign Ken a project until in or around August 2023, when it assigned him to a cyber project, of which he was unfamiliar.

      Additionally, since Ken began working for Deloitte in 2016, Deloitte always billed its clients for the work that Ken rendered for these projects. However, Defendant did not assign him the same amount of work upon his return from deployment as they had assigned him prior to his military deployment. As a result of Defendant not assigning Ken the same amount of work upon his return from military deployment, that it provided him previously, Ken was no longer generating the same amount of revenue. As such, Defendant manufactured a situation to make Ken appear less valuable.

20. These actions by Deloitte constitute a violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA), which mandates that service members be reinstated to their previous positions or positions of comparable status, pay, and seniority upon their return from military service, Deloitte's failure to comply with these legal obligations has caused significant harm to Ken, both professionally and personally.

21. Additionally, Defendant further subjected Ken to discrimination when, in the years that Ken was deployed, it did not provide him a salary increase or a share of the team bonus, while similarly situated colleagues did. In the years that Ken was deployed for military service, Defendant did not issue him the same salary increases or bonuses that it issued his similarly situated colleagues.

22. In or around August 2023, Allison May ("May"), Senior Manager on the Cyber Project, issued Ken a positive evaluation score, further evidencing that Ken was

6

performing his job in a satisfactory manner, notwithstanding the aforementioned discriminatory comments and conduct to which Defendant subjected him to.

23. In or around September 2023, Ken was scheduled for a regular battle assembly (spanning Friday, Saturday, and Sunday, with Friday added as a make-up day, since the unit had not held a battle assembly in August). Additionally, Ken attended multiple medical appointments at the Veteran's Association Hospital during this time. When learning of these obligations, May singled Ken out based on his military service when unfairly criticizing him for having to report for military service.

24. As the military rescheduled the above-mentioned battle assembly, Ken was able to attend work after all. When Ken arrived to work on that Friday in question, May expressed frustration with Ken's military obligations and military appointments, and she questioned why Ken was present at the office and not at his military obligation. Ken explained that military drill dates are occasionally cancelled or rescheduled for various reasons, but May falsely casted doubt on Ken's explanation.

25. May said to Ken, in sum and substance, "[y]ou're never where you need to be," and "[y]ou should be where you need to be." May falsely accused Ken of not being truthful with his schedule, and overly scrutinized his schedule in a way she did not do to his similarly situated colleagues who were not disabled or military members. May further singled Ken out based on disabilities and military service when she requested proof of Ken's military schedule. Ken complied with her request.

26. Defendant singled Ken out due to his military service in that Defendant did not similarly question requests for time off or seek additional proof justifying the time off for his similarly situated colleagues who did not serve in the military. However, Defendant criticized and scrutinized Ken's requests for time off for military service and/or medical appointments, and demanded Ken submit proof of his above-mentioned Regular Battle Assembly schedule.   Ken again complied.

27. In or around November 2023, Ken also had a telephone conversation with Mark Pearson ("Pearson"), Deloitte Principal at Science Leader Forensic and Financial Crime Investigations and Disputes, seeking clarification about his role as manager and limited work on the cyber project.

28. Then, in response to this conversation, Pearson visited the New York office and held a meeting where he stated that any employees not currently being billed to clients would be let go.   Since Ken was the only person who Defendant was not billing to clients, Pearson singled Ken out based on his military service and disabilities.

29. Then, in a further attempt to single Ken out and discriminated against him for his protected classes, Pearson removed Ken from the Cyber project.   Pearson falsely stated that Ken was removed due to performance and stated words to the effect of Ken, "not being where he needed to be," in reference to his disabilities and military service.

30. Defendant's false claims of performance issues were pretext for a discriminatory motive, because prior to his most recent deployment and subsequent medical

appointments, Defendant regularly issued Ken positive evaluation scores. Deloitte also rewarded Ken for his positive performance by issuing him two, "Deloitte Applause Awards," which came with bonuses, in recognition of his strong performance. Additionally, Deloitte previously did not issue Ken any formal reprimands or place him on a performance improvement plan.

31. Defendant denied Ken his proper reemployment and restatement into his proper position after returning from uniformed service, in violation of the Uniformed Services Employment and Reemployment Rights Act. Defendant also discriminated against Ken due to a disability that was uncovered and/or aggravated during that period of uniformed service, in violation of the ADA, USERRA, NYSHRL, and NYCHRL.

32. In or around late 2023, Ken mentioned to Durisin that Defendant issued him a positive review. However, Durisin explained that his review was changed from a positive score to a negative score. While May evaluated Ken, Pearson altered his evaluation from a positive score to a negative score, without a valid reason or explanation. As detailed above, Defendant previously issued Ken positive evaluation scores, so this change from a positive score to a negative review, without a factual predicate for same, is another example of Defendant's discriminatory and retaliatory animus.

33. On or about May 29, 2024, Martin Petrellam, ("Petrellam") Principal at Deloitte Financial Advisory Services, accompanied by a Human Resources associate, (name unknown) called Ken and terminated his employment. Defendant falsely claimed

      that Ken was terminated due to performance and a departmental restructuring. Deloitte's reasoning for Ken's termination is a pretext for a discriminatory and/or retaliatory motive.

34. Defendant terminated Ken despite the fact that he was never formally reprimanded or placed on a performance improvement plan. As such, Defendant terminated Ken for false, pretextual reasons, based on his membership in the military services and/or due to his service-related disabilities. Additionally, as a result of Defendant's discriminatory termination of Ken, he also suffered the loss of his top-secret security clearance, which has fundamentally altered the trajectory of his military career.

35. As a result of the foregoing, Ken has suffered financial damages, future damages, as well as emotional distress damages.

## CLAIMS FOR RELIEF

36. As described above, Defendant has discriminated against Plaintiff on the basis of his disability, subjected him to a hostile work environment, and retaliated against Plaintiff in violation of the Americans with Disabilities act.

37. As described above, Defendant has discriminated against Plaintiff on the basis of his disability, subjected him to a hostile work environment, and retaliated against Plaintiff in violation of the Executive Law § 296.

38. As described above, Defendant has discriminated against Plaintiff on the basis of his disability, subjected him to a hostile work environment, and retaliated against Plaintiff in violation of New York City Administrative Code Title 8.

39. Plaintiff has been subjected to discrimination, based on his military service and/or in retaliation for his opposition to discriminatory practices.  Defendant Deloitte's actions are in violation of the Uniformed Services Employment and Reemployment Rights Act.

40. By reason of Defendant' violation of Plaintiff's rights, Plaintiff has suffered a loss of monetary benefits associated with his employment, in addition to suffering physical, emotional and other damages.

WHEREFORE, Plaintiff demands judgment against Defendant for all compensatory, emotional, physical, lost pay, front pay, punitive damages, injunctive relief, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Seaford, New York
       February 24, 2024

RICOTTA & MARKS, P.C.
*Attorneys for Plaintiff*
2174 Jackson Ave.
Seaford, New York 11783
(347) 464-8694

_____/s_____

                                                        Matthew Marks