UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
KENNY GORIS,                                                            :
                                                                        :
                              Plaintiff,                                :
                                                                        :
              -v-                                                       :            25 Civ. 1532 (JPC)
                                                                        :
                                                                        :            OPINION AND ORDER
DELOITTE,                                                              :
                                                                        :
                              Defendant.                                :
                                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Kenny Goris brings this action under federal, state, and city law alleging that his

former employer, Defendant Deloitte Transactions and Business Analytics LLP,[1] discriminated

and retaliated against him based on his disabilities and military service.  His claims are brought

under the Americans with Disabilities Act ("ADA"), the Uniformed Services Employment and

Reemployment Rights Act ("USERRA"), the New York State Human Rights Law ("NYSHRL"),

and the New York City Human Rights Law ("NYCHRL").  Defendant moves to dismiss on several

grounds, including that Plaintiff fails to plead sufficient facts to plausibly allege a causal link

between his disabilities or military service and any adverse actions against him.

For the reasons that follow, the Court grants the motion as to Plaintiff's claims under the

ADA and the USERRA and declines to exercise supplemental jurisdiction over the NYSHRL and

NYCHRL claims.  Plaintiff may file a Second Amended Complaint within two weeks of this

Opinion and Order if he believes he can cure the pleading deficiencies discussed below.

---

[1] According to Defendant, the Amended Complaint incorrectly identifies it as only
"Deloitte."  *See* Dkt. 23 ("Motion") at 1 n.1.

## I. Background

**A.    Facts[2]**

Plaintiff, a senior officer in the United States Army Reserve, suffers from numerous disabilities resulting from his military service.  Am. Compl. ¶¶ 7-9, 13.  When he began working for Defendant as an advisory manager in approximately November 2016, Plaintiff told his managing director about his disabilities and advised that they required regular medical attention.  *Id.* ¶¶ 10, 12.  He also informed his managing director of his military service, deployment history, and need to attend monthly medical appointments.  *Id.* ¶ 12.

Plaintiff deployed several times while working for Defendant.  From February 24, 2017, to February 16, 2018, he served in Africa, where he injured both shoulders.  *Id.* ¶ 14.  When he returned, he informed an unidentified person working for Defendant[3] about those shoulder injuries and reiterated his previous disabilities.  *Id.*  In 2020 and 2022, Plaintiff served in Guantanamo Bay, Cuba, and Fort Cavazos, Texas.  *Id.* ¶¶ 13, 15.  His deployment to Fort Cavazos ended in approximately December 2022 and he returned to work for Defendant in approximately January 2023, at which point he informed an unidentified employee of Defendant of injuries to his hip.  *Id.* ¶¶ 15-16.

---

[2] The Court takes these factual allegations from the Amended Complaint.  *See* Dkt. 17 ("Am. Compl.").  In considering Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the Amended Complaint's factual allegations as true and draws all reasonable inferences in Plaintiff's favor.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

[3] The Amended Complaint does not name any individual defendants, but at various points refers to conversations Plaintiff had with "Defendant" and conduct done by "Defendant" in a manner that implies an individual employee of Defendant.  *See, e.g.*, Am. Compl. ¶¶ 14 (describing that Plaintiff "informed Defendant that . . ."), 15 (same), 26 ("Defendant criticized and scrutinized [Plaintiff's] requests . . . .").

Prior to that last deployment to Fort Cavazos and his subsequent medical appointments, Plaintiff regularly received positive performance reviews and won two "Deloitte Applause Awards," which came with bonuses. *Id.* ¶ 30. He has never been formally reprimanded or placed on a performance improvement plan. *Id.* But he claims that he did not receive the same salary increases or bonuses during his years of deployment that similarly situated colleagues were awarded during those periods. *Id.* ¶ 21.

When Plaintiff deployed to Fort Cavazos in 2022, he had been a manager leading "a team of twelve anti-money laundering and financial crime specialists" as they worked on an Anti-Money Laundering ("AML") regulatory project. *Id.* ¶ 16. But upon returning from that deployment in January 2023, Plaintiff noticed a "marked shift" in how Defendant treated him. *Id.* Defendant did not "reinstate [Plaintiff] to a position comparable to the one" he had held previously. *Id.* ¶ 17. Instead, it required him to "independently search for work assignments" by "emailing Managers and Senior Managers and Partners," "contacting the Human Resources Associate for Financial Crimes," and "searching [Defendant's] portal" for active project opportunities. *Id.* Without an assignment, Plaintiff could not bill his time to clients and so generated less revenue for Defendant. *Id.* ¶ 19.

Finding a project to join was challenging for Plaintiff. *Id.* ¶ 18. Later that month, he lodged a complaint. During a January 2023 phone call with the Human Resources Senior Manager responsible for AML, Financial Crimes, and Regulatory Compliance projects, Plaintiff explained that he had just returned from a military deployment, complained that he was not assigned to a position like the one that he had before the deployment, and stated that he felt that Defendant did not support him. *Id.*

With Defendant failing to take any corrective measures, Plaintiff continued to request assignments and projects over the next eight months, only to be rebuffed. *Id.* ¶ 19. In August 2023, Defendant assigned Plaintiff to a "cyber project." *Id.* The project's senior manager, Allison May, issued Plaintiff a positive performance evaluation that same month, *id.* ¶ 22, but their relationship soon soured. In September, Plaintiff attended multiple medical appointments and was supposed to report to a three-day, routine battle assembly beginning on a Friday. *Id.* ¶ 23. Upon "learning of these obligations, May singled [Plaintiff] out" for his military service and "unfairly criticiz[ed] him for" performing military duties. *Id.* When Plaintiff showed up at work on the Friday of the scheduled battle assembly, which had been postponed, "May expressed frustration" at his military obligations and questioned why he was not at the battle assembly. *Id.* ¶ 24. Plaintiff explained "that military drill dates are occasionally cancelled or rescheduled," yet May "falsely casted doubt on [his] explanation." *Id.* She accused him of lying about his schedule and told him, "in sum and substance," that "you're never where you need to be" and "you should be where you need to be." *Id.* ¶ 25 (citation modified). May demanded proof of Plaintiff's military schedule and "criticized and scrutinized [his] requests for time off for military service and/or medical appointments," even though she "did not similarly question requests for time off" from colleagues who were not serving in the military. *Id.* ¶¶ 25-26. Plaintiff produced all the information that May demanded. *Id.*

In November 2023, Plaintiff spoke on the phone with another of Defendant's senior employees, Mark Pearson, in an attempt to receive "clarification about his role as manager and limited work on the cyber project." *Id.* ¶ 27. Soon after, Pearson held a meeting at the New York office, where he stated that anyone "not currently being billed to clients would be let go." *Id.* ¶ 28. Plaintiff "was the only person who[m] Defendant was not billing to the clients." *Id.* Thus, as

alleged, "Pearson singled [Plaintiff] out based on his military service and disabilities." *Id.* "[I]n a further attempt to single [Plaintiff] out," Pearson "removed [Plaintiff] from the [c]yber project," citing Plaintiff's performance and stating that Plaintiff was "not being where he needed to be." *Id.* ¶ 29.

Near the end of 2023, Plaintiff learned that Pearson altered Plaintiff's performance review from positive to negative "without a factual predicate." *Id.* ¶ 32. On May 29, 2024, during a phone call involving Plaintiff, a principal in Defendant's Financial Advisory Services team, and a human resources associate, Defendant fired Plaintiff, citing his performance and a departmental restructuring. *Id.* ¶ 33.

**B.     Procedural History**

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission on November 26, 2024, *id.* ¶ 4, Plaintiff commenced this action on February 24, 2025. Dkt. 1. On May 29, 2025, he filed the Amended Complaint, seeking relief for unlawful discrimination and retaliation under the ADA, Am. Compl. ¶ 36, the USERRA, *id.* ¶ 39, the NYSHRL, *id.* ¶ 37, and the NYCHRL, *id.* ¶ 38.[4] Defendant moved to dismiss the Amended Complaint on July 2, 2025. Dkts. 22, 23. Plaintiff filed his opposition brief on August 6, 2025. Dkt. 26. Defendant replied on September 10, 2025. Dkt. 29.

**II.  Legal Standard**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[4] In his brief opposing dismissal, Plaintiff withdrew his ADA retaliation claim, Am. Compl. ¶ 36. Dkt. 26 ("Opposition") at 1 n.1. That claim therefore is dismissed.

570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009) (citation modified).

### III. Discussion

### A. Plaintiff Fails to State a Claim for ADA Discrimination.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state an ADA discrimination claim, a plaintiff must allege that

> (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability.

*Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). The parties do not dispute that Defendant is subject to the ADA, that Plaintiff is disabled within the ADA's meaning, and that he was qualified for his job with Defendant. *See generally* Motion; Opposition. In dispute is whether Plaintiff pleads sufficient facts to allege that but for his disabilities, Defendant would not have taken adverse action against him. *See Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019); *see also C.C. v. Google, LLC*, No. 24 Civ. 7811 (PAE), 2025 WL 1938809, at *4 (S.D.N.Y.

July 15, 2025).  Defendant argues that Plaintiff does not plead that causal link, and the Court agrees.

The Court assumes without deciding that Plaintiff adequately alleges adverse actions.  They are: Defendant's denial of a salary increase and a share in the team's bonus; Defendant's refusal to "reinstate [Plaintiff] to his position when he returned from military duty with a new disability," which necessitated Plaintiff's eight-month search for a "regular position or project" during which he "appear[ed] less productive"; Defendant's scrutiny of Plaintiff's medical appointments; and Defendant's termination of Plaintiff.  Opposition at 6.  Plaintiff's ADA discrimination claim fails, however, because he does not adequately allege a causal link between his disabilities and any of those actions.

To establish causation, a plaintiff may put forward direct evidence by alleging "statements or . . . conduct reflecting animus towards people with disabilities," *C.C.*, 2025 WL 1938809, at *4 (citation modified), or circumstantial evidence that provides "plausible support to a minimal inference of discriminatory motivation," *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).  "[A] complaint can adequately plead an inference of causation in several ways," such as by comparing the employer's treatment of similarly situated colleagues who are not disabled and by pleading "temporal proximity between disclosure of the employee's disability and an adverse action."  *C.C.*, 2025 WL 1938809, at *4 (citation modified).

Plaintiff urges the Court to infer Defendant's discriminatory intent based on (1) "verbal comments by Defendant," which the Court construes to refer to comments allegedly made by May and Pearson; (2) "the treatment of similarly situated employees"; and (3) temporal proximity.  Opposition at 9.  To be sure, the Amended Complaint accuses May and Pearson of making

7

critical—and allegedly unfair—comments to Plaintiff about his leave schedule, but those comments do not display discriminatory animus on their face. *See* Am. Compl. ¶¶ 25 (alleging that May told Plaintiff that he was "never where [he] need[s] to be" after his battle assembly was cancelled), 29 (alleging that Pearson told Plaintiff he was "not being where he needed to be" when removing him from the cyber project). But no matter what May may have said, Plaintiff does not allege that she took any adverse action against him. And the Amended Complaint does not plead any specific facts linking Pearson's comments to Plaintiff's disabilities. *See id.* ¶ 29. Indeed, Plaintiff does not allege that Pearson even knew that he was disabled. *See generally id.* "In order to discriminate on the basis of a disability, an employer must first be aware that their employee has a disability in the first place." *Baluch v. 300 W. 22 Realty, LLC*, 22 Civ. 9747 (JPO), 2023 WL 112547, at *4 (S.D.N.Y. Jan. 5, 2023). Though the Amended Complaint makes the conclusory allegation that Pearson made his comments "in reference to [Plaintiff's] disabilities and military service," Am. Compl. ¶ 29, without further factual allegations that assertion is conjecture and too speculative to "nudge[ Plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (describing comments as less probative the "more remote and oblique" they are "in relation to the employer's adverse action" (citation modified)). Factual allegations showing that Pearson was referring to Plaintiff's disabilities or was even aware of them are entirely absent from the Amended Complaint.

Nor can the Court draw the requisite inference based on a comparison to similarly situated employees. "[A] complaint must plausibly allege that the plaintiff was 'similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself].'" *C.C.*, 2025 WL 1938809, at *5 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)); *see Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 127 (2d Cir.

2019) (summary order) (rejecting an inference of discriminatory intent where a complaint did not identify similarly situated people).  Plaintiff contends that Defendant questioned his schedule "in ways that it did not scrutinize his similarly situated colleagues."  Opposition at 8.  But Plaintiff does not say who his comparators are, "what their responsibilities were, how their workplace conduct compared to [his], or how they were treated." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014).  Here, too, Plaintiff's factual allegations are too thin to "nudge[ Plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 92-93 (S.D.N.Y. 2024) (collecting cases showing that conclusory allegations that do not "identify potential comparators, let alone allege facts indicating that these comparators were similarly situated to [the p]laintiff[,] . . . fail to give at least minimal support for the proposition that the employer was motivated by discriminatory intent" (citation modified)).

Plaintiff's reliance on temporal proximity to establish disability-based discriminatory intent is also unavailing.  Defendant's decision not to reinstate Plaintiff to his old project team took place more than six years after Plaintiff first told a team manager about his disabilities.  *See* Am. Compl. ¶¶ 10, 12, 17.  That is far too long to sustain an inference of discriminatory intent based on temporal proximity.  *See, e.g.*, *C.C.*, 2025 WL 1938809, at *6 (holding that three and a half months is too long to allow an inference of causation); *Kamiel v. Hai St. Kitchen & Co. LLC*, No. 19 Civ. 5336 (PAE) (SDA), 2023 WL 2473333, at *4 (S.D.N.Y. Mar. 13, 2023) (noting two months or less between disclosure of a disability and an adverse action is typically sufficient, and collecting cases), *adopting*, 2022 WL 19410317 (S.D.N.Y. Aug. 11, 2022).  The same analysis holds true with respect to the remaining alleged adverse actions, which occurred even later.

Plaintiff tries to pin the beginning point of the temporal-proximity analysis in approximately December 2022 or January 2023, which is allegedly when he told Defendant of his new hip injury and was not assigned a position similar to the one he had previously held. Am. Compl. ¶ 15 (implying that Plaintiff notified Defendant in approximately December 2022); Opposition at 8 (stating January 2023 as the relevant date). Whether "temporal proximity can give rise to a causal inference of discrimination" is a "context-specific inquiry." *Osby v. City of New York*, No. 13 Civ. 8826 (TPG), 2017 WL 4236563, at *5 (S.D.N.Y. Sept. 22, 2017) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013)). Here, even though Plaintiff allegedly told Defendant of his hip injury soon before a purported adverse action, "the rest of [P]laintiff's Amended Complaint cuts against an inference of discriminatory animus." *Id.* For more than six years, Plaintiff worked for Defendant with significant achievements and without any allegedly adverse actions taken, despite his various disabilities, including injuries to his back and knees, as well as tinnitus, vertigo, and migraines. Am. Compl. ¶¶ 7, 10, 12. And throughout that period, Plaintiff accumulated new ailments, such as injuries to both shoulders, that did not prompt any adverse action by Defendant. *See id.* ¶ 14. As alleged, Defendant received notice of the hip injury latest, but the Amended Complaint does not plead any facts that allow the inference that notice of this particular injury would have prompted discriminatory animus in Defendant. It does not allege, for example, that the hip injury impacted Plaintiff's performance as an advisory manager or required him to miss work. Had Plaintiff's work performance changed, or a particular accommodation need arisen, shortly before Defendant took an adverse action, Plaintiff would have a stronger argument that the temporal proximity of those two events allows an inference of discriminatory intent. But the hip injury was just the latest problem ailing Plaintiff, who had a long record of performance without incident while working for Defendant even while sustaining

additional injuries, and there is no indication that Defendant changed its position with respect to Plaintiff's disabilities as a result of it. The Court therefore cannot infer discriminatory intent based on temporal proximity alone. *See Iqbal*, 556 U.S. at 578 (explaining that a complaint that "pleads facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief" (citation modified)).

Moreover, Plaintiff does not plead any facts showing that his hip injury at all factored into Defendant's alleged adverse actions. He does not allege whom he told about his injury or whether the decision-makers who allegedly took adverse actions against him even knew of that injury. Notably, the Amended Complaint does not plead facts indicating that Pearson and the principal who informed Plaintiff that he was fired—the only identified supervisors alleged to have taken adverse action against Plaintiff—ever knew that Plaintiff was disabled.

Because Plaintiff fails to allege a plausible inference of discriminatory intent based on his disabilities, the Court dismisses his discrimination claim under the ADA.

**B.      Plaintiff Fails to State a Claim for Discrimination Based on His Military Status.**

Plaintiff's claim for discrimination based on his military status also fails to allege a causal link.[5]   Section 4311(a) of the USERRA prohibits employers from denying "any benefit of employment . . . on the basis of" a person's "membership" in the military, "performance of service," or "obligation."  38 U.S.C. § 4311(a).  A "benefit of employment" means "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement."  *Id.* § 4303(2).  An employer "engages in a prohibited act

---

[5] Plaintiff's opposition brief cites the regulation governing mandatory reemployment under the USERRA, Opposition at 9 (citing 20 C.F.R. § 1002.197), but the Amended Complaint does not bring a USERRA reemployment claim, *see* Am. Compl. ¶¶ 36-40.

under USERRA 'if the [employee]'s membership . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership.'" *Lapaix v. City of New York*, No. 13 Civ. 7306 (LGS), 2014 WL 3950905, at *5 (S.D.N.Y. Aug. 12, 2014) (quoting 38 U.S.C. § 4311(c)(1)).

Thus, to state a discrimination claim under the USERRA, a plaintiff must allege sufficient facts "upon which it could plausibly be inferred that his military service . . . was a 'substantial or motivating factor in the adverse [employment] action[s].'" *Hunt v. Klein*, 476 F. App'x 889, 891 (2d Cir. 2012) (summary order) (quoting *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401 (1983)). "Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Lapaix*, 2014 WL 3950905, at *5 (citation modified). A motivating factor, therefore, "is not necessarily the sole cause of the action, but rather it is one of the factors that a truthful employer would list if asked for the reasons for its decision." *O'Connell v. Town of Bedford*, No. 21 Civ. 170 (NSR), 2022 WL 4134466, at *11 (S.D.N.Y. Sept. 12, 2022) (citation modified). It can be alleged by pleading facts that constitute "direct or circumstantial evidence, including . . . proximity in time between the employee's military activity and the adverse employment action, . . . and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Woodard v. N.Y. Health & Hosps. Corp.*, 554 F. Supp. 2d 329, 348-49 (E.D.N.Y. 2008) (citation modified); *see Lapaix*, 2014 WL 3950905, at *5.

The Court again assumes without deciding that Plaintiff properly alleges adverse actions. Specifically, Plaintiff alleges that Defendant refused to reinstate Plaintiff to his pre-deployment project team or to find him a comparable position, instead requiring him to search independently for a project and making him appear less productive while doing so; did not assign him to a project

12

until August 2023, and Plaintiff lacked experience for that project; and terminated him. *See* Opposition at 11-12. Like Plaintiff's ADA discrimination claim, the USERRA discrimination claim fails because Plaintiff does not plead sufficient facts to infer discriminatory intent.

First, Plaintiff contends that "[t]he timing . . . alone compels" that inference because after his Fort Cavazos deployment, Defendant "took away his managerial, leadership position." *Id.* at 12. As an initial matter, the Amended Complaint alleges only that Defendant did not place Plaintiff in a position "comparable" to his previous one, Am. Compl. ¶ 17, not that Defendant "took away" Plaintiff's managerial position. Plaintiff cannot amend his pleadings in his opposition brief. *A Star Grp. Inc. v. Manitoba Hydro*, 621 F. App'x 681, 683 (2d Cir. 2015) (summary order); *cf. In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 562 (S.D.N.Y. 2011). To the extent Plaintiff argues that the period between his Fort Cavazos deployment and not being placed in a "comparable" position suggests discriminatory intent, that argument fails. Courts infer discriminatory intent based on temporal proximity because when an employer takes an adverse action soon after learning of an employee's protected status, it is plausible that the employer would not have done so had it not learned of that status. Here, Defendant knew of Plaintiff's military status for many years, and Plaintiff went on multiple deployments while working for Defendant, including a year-long deployment to Africa from February 2017 to February 2018, as well as a deployment to Guantanamo Bay, Cuba. Am. Comp. ¶¶ 12-14. Thus, when Defendant allegedly took an adverse action in the beginning of 2023 following Plaintiff's Fort Cavazos deployment, it did so years after learning about his protected status. While there could be a scenario where an employer changes its position towards an employee's status after years of having known about it, the Amended Complaint lacks any factual allegations allowing for such an inference, relying merely on a coincidence of timing.

Next, Plaintiff contends that May's alleged comments, her demand that he produce his military leave schedule, and her accusation that he was dishonest about his military assignments permit an inference of discriminatory motivation. Opposition at 12. But there is no basis to infer a causal link because, even assuming May was frustrated by Plaintiff's military schedule, *see* Am. Compl. ¶ 25, Plaintiff does not link May to his termination or to any other alleged adverse action. *See Hansen v. City of New York*, No. 24 Civ. 2808 (JMF), 2025 WL 588119, at *5 (S.D.N.Y. Feb. 24, 2025) (declining to find a causal link where the plaintiff alleged derogatory remarks and "petty harassment," but did not "allege sufficient facts to establish that his military status was a motivating factor in any adverse action"). Far from taking any adverse actions against Plaintiff, May allegedly reviewed him favorably. Am. Compl. ¶¶ 22, 32. As for May's scrutiny of Plaintiff's military leave schedule, it is "generally appropriate" for an employer to inquire about and "request documentation for military leave." *O'Connell*, 2022 WL 4134466, at *9 (citation modified). While Plaintiff contends that May scrutinized him more than similarly situated employees who were not in the military, *see* Am. Compl. ¶ 26, as with his ADA discrimination claim, he fails to allege sufficient facts supporting such a comparison. *See Harvin*, 767 F. App'x at 127; *see also supra* III.A.

Pearson's actions also do not give rise to the inference. *See* Opposition at 11-12. The Amended Complaint makes two speculative allegations that purport to show that Pearson considered Plaintiff's military status when taking action against him. Both rely on mere conjecture and thus fail to establish a causal link. First, the Amended Complaint alleges that Pearson, when he stated that employees not billing clients would be terminated, "singled [Plaintiff] out based on his military service." Am. Compl. ¶ 28. Second, it alleges that Pearson was referring to Plaintiff's military service when he removed Plaintiff from the cyber project and commented that Plaintiff

14

was "not being where he needed to be." *Id.* ¶ 29.  In both instances, as alleged, Pearson's statements were on their face unrelated to military status.  Without additional context, these allegations are too conjectural to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Indeed, there is no allegation in the Amended Complaint that Pearson even knew that Plaintiff was in the military. *See generally* Am. Compl.  And, finally, though Plaintiff alleges that Pearson changed his once-positive evaluation to a negative one "without a factual predicate," *id.* ¶ 32, Plaintiff offers no reason to infer that his military status motivated that decision. *See* Opposition at 12.[6]

Plaintiff fails to plead sufficient facts to allege a causal link between his military service and any adverse action, so the Court dismisses his USERRA discrimination claim.

**C.    Plaintiff Fails to State a Claim for USERRA Retaliation.**

The USERRA also makes it unlawful to retaliate against an employee seeking to enforce rights under that statute.  38 U.S.C. § 4311(b).  To state a claim for USERRA retaliation, "a plaintiff must show that (1) he was engaged in protected activity; (2) that the employer was aware of that activity; (3) that the plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action," such that "his exercise of his USERRA rights was a motivating factor in the defendant's action." *Hansen*, 2025 WL 588119, at *6 (citation modified); *see* 38 U.S.C. § 4311(c)(2).  A plaintiff may allege causation "(a) indirectly by showing that the protected activity was followed closely by discriminatory

---

[6] The Amended Complaint alleges that Defendant did not issue Plaintiff a salary increase or a share in the team bonus while he was deployed, in contrast to his similarly situated colleagues. Am. Compl. ¶ 21.  Plaintiff's brief, however, does not raise that argument in support of his USERRA discrimination claim. *See* Opposition at 9-13.  Even if he had, he runs into the same problems as with his other allegations based on comparisons to similarly situated employees, *i.e.*, he fails to identify comparators and allege why they are similarly situated. *See Mitchell*, 745 F. Supp. 3d at 92-93.

15

treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." *Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 537 (S.D.N.Y. 2017) (citation modified).

Plaintiff's USERRA retaliation claim fails, again, for lack of causation. Plaintiff contends that Defendant "position[ed him] for termination" in retaliation for complaining in January 2023 that he was not assigned a position like the one he held before his deployment to Fort Cavazos. Opposition at 14. Assuming without deciding that this complaint constitutes a protected activity under the USERRA, Plaintiff does not plead sufficient facts that the complaint motivated Defendant's conduct, primarily because he does not specify whose conduct he is pointing to. Plaintiff does not identify who denied his requests for assignments during the eight months following his January 2023 complaint or who made the decision to terminate him. Nor does he plausibly allege that whoever decided to take those actions knew about his January 2023 complaint. *See* Am. Compl. ¶¶ 18-19. Plaintiff also does not allege that the person to whom he complained, a senior manager in human resources, ever conveyed his complaint to anyone else working for Defendant. In fact, his only specific allegation regarding the consequence of that complaint is *in*action—specifically, that Defendant "ignored his complaints" and did not take corrective measures. *Id.* ¶ 18. Neither does Plaintiff allege that Pearson knew about his protected activity when Pearson removed him from the cyber project and changed his positive review to a negative one. *See* Opposition at 14; Am. Compl. ¶¶ 29, 32.

Temporal proximity does not save this claim either. As just discussed, mere conjecture ties Plaintiff's January 2023 complaint to the eight-month search that followed soon after. That is insufficient to support an inference of discriminatory intent. Plaintiff's termination approximately sixteen months after that complaint is far too distant from the purported protected activity to

support an inference of causation.  *See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 n.5, 6 (2d Cir. 2001) (collecting cases in which a time lag of more than a year defeats an inference of causation); *see also Crianza v. Holbrook Plastic Pipe Supply, Inc.*, No. 22 Civ. 7685 (HG), 2024 WL 216696, at *3 (E.D.N.Y. Jan. 19, 2024) (collecting cases).  And assuming *arguendo* that removing Plaintiff from the cyber project ten months after the complaint constitutes an adverse action, that also occurred too long after his protected activity to support the inference.  *See Crianza*, 2024 WL 216696, at *3 (noting that only in "rare cases" do courts infer retaliatory intent after a "gap . . . as long as eight months" (citation modified)).[7]  Finally, if changing Plaintiff's positive review into a negative one is an adverse action, that conduct—which occurred after Plaintiff's removal from the cyber project—also occurred too long after any protected activity to support an inference.  *See Ferraro v. N.Y.C. Dep't of Educ.*, 404 F. Supp. 3d 691, 717 (E.D.N.Y. 2017) (holding that negative evaluations occurring four months or more after the protected action were too attenuated to establish causation).

Because Plaintiff fails to plausibly allege that his January 2023 complaint was a motivating factor for any subsequent adverse action, the Court grants Defendant's motion as to the USERRA retaliation claim.

---

[7] To the extent Plaintiff's opposition brief can be construed to contend that initially making Plaintiff search for work assignments independently was an adverse action taken in retaliation for protected activity, the Court rejects that argument as well.  *See* Opposition at 14; Reply at 9.  The protected activity rose out of Defendant's requirement that Plaintiff search for assignments on his own, and a defendant's conduct that preceded protected activity "could not have been in retaliation for acts not yet taken."  *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001).

**D.    The Court Declines to Exercise Supplemental Jurisdiction Over the State- and City-Law Claims.**

Plaintiff's remaining claims are for discrimination and retaliation under the NYSHRL and the NYCHRL.[8]  The lone jurisdictional basis for these claims is supplemental jurisdiction under 28 U.S.C. § 1367(a).  A court's exercise of supplemental jurisdiction, however, is discretionary, and "[i]t is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006); *see* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").  Plaintiff's federal causes of action have been dismissed for failure to state a claim, the litigation is still at its early stages, and no exceptional circumstances justify a departure from the principle that the dismissal of all federal causes of action from a complaint "will usually result in the dismissal of the state-law claims."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018).  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under the NYSHRL and the NYCHRL and dismisses those claims without prejudice.

### IV.  Conclusion

For the foregoing reasons, the Court grants Defendant's motion and dismisses the Amended Complaint without prejudice.  Plaintiff has not requested leave to amend, but "it is within the Court's discretion to *sua sponte* grant leave to amend."  *In re Bystolic Antitrust Litig.*, 583 F.

---

[8] Defendant argues that the Court must dismiss Plaintiff's retaliation claims under the NYSHRL and the NYCHRL because he did not oppose their dismissal.  Reply at 1.  Because the Court declines to exercise supplemental jurisdiction over these claims, it does not reach their merits.

Supp. 3d 455, 496 (S.D.N.Y. 2022) (citation modified); *see Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (stating that the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)"). Because it may be possible for Plaintiff to address the pleading deficiencies discussed above through additional factual allegations, the Court will allow Plaintiff to amend his pleading once again. Accordingly, within two weeks of this Opinion and Order, Plaintiff may file a Second Amended Complaint only if he believes that pleading additional facts will fix the defects identified herein. In the event Plaintiff files a Second Amended Complaint, Defendant shall respond within two weeks of its service.

The Clerk of Court is respectfully directed to close Docket Number 22.

SO ORDERED.

Dated: March 5, 2026
      New York, New York

_____
JOHN P. CRONAN
United States District Judge